IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| HARRY LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | FILE NO.: 3:23-cv-00126-TCB |
| v. | ) | |
| | ) | |
| CITY OF WOODBURY, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS CITY OF WOODBURY AND CORPORAL MCDANIEL'S
RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR
INJUNCTIVE RELIEF AND PARTIAL MOTION FOR JUDGMENT ON
THE PLEADINGS**

COME NOW, defendants City of Woodbury and Corporal Robert McDaniel and file their response in opposition to plaintiff's motion for injunctive relief pursuant to Fed. R. Civ. P. 65 and motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and Local Rule 7.1(C) (Doc. 15), showing as follows:

## I.     INTRODUCTION

This case arises out of plaintiff's arrest for violating City of Woodbury's disorderly conduct ordinance. Plaintiff seeks to put the cart before the horse by filing a motion for injunctive relief and for a partial motion for judgment on the pleadings, arguing that the City's ordinance is facially invalid because it regulates speech. (Doc. 15-1, p. 6.) The City's ordinance is not facially unconstitutional

because it regulates conduct, not speech. Therefore, plaintiff's motion for preliminary injunction fails. Likewise, plaintiff's motion for partial judgment on the pleadings on his municipal liability claim against the City is premature. Finally, Corporal McDaniel is entitled to qualified immunity as to plaintiff's unlawful seizure claim because the ordinance at issue is constitutionally valid.

## **FACTUAL ALLEGATIONS OF THE COMPLAINT IN DISPUTE**

While plaintiff claims that "key facts" are undisputed, that is not true. Defendants dispute the following facts as alleged in the complaint:

1. "On July 2, 2021, plaintiff was arrested under ordinance § 16-67 for saying that the City Employees at the Municipal Center were 'racist' when they declined to take action to restore his home water service during the heat of the July summer." (Doc. 1, ¶ 10.) While plaintiff's alleges he was arrested for what he *said*, these defendants denied the allegation as stated because they contend plaintiff was arrested for his *conduct*. (Doc. 6, ¶ 10.)

2. "Defendant Matthews then knowingly and intentionally made false statements to the Woodbury police, falsely reporting that plaintiff 'accosted' him and had yelled and cursed at him, which did not happen. (Doc. 1, ¶ 16.) Defendants denied this allegation as well, as the factual record has not yet been developed." (Doc. 6, ¶ 16.)

3. "Later that day, on July 2, 2023, Woodbury Police Officer Robert McDaniel cited, arrested, and jailed plaintiff for Disorderly Conduct, noting that the basis for the arrest was 'accosting' Defendant Matthews and yelling and cursing about his water service ending." (Doc. 2, ¶ 17.) Defendants denied this allegation, in part, in the form and manner alleged to the extent it suggests plaintiff was arrested solely for his speech. (Doc. 6, ¶ 17.)

4. "Although plaintiff sharply disputes that he yelled or cursed at all, even if he had, that would not have amounted to probable cause or arguable probable cause for disorderly conduct under a facially constitutional statute." (Doc. 2, ¶ 18.) Defendants denied this allegation, which is a legal conclusion, because it is an *incorrect* legal conclusion: plaintiff's actual conduct does not determine the probable cause (or arguable probable cause) analysis, which is instead based on the victim's statements to Officer McDaniel. (Doc. 6, ¶ 18.)

5. "At no point was plaintiff aggressive, violent, or threatening, and his speech did not amount to fighting words. At most, plaintiff expressed frustration for his lack of water in the heat of the summer with an infant in the home." (Doc. 2, ¶ 19.) These defendants denied this allegation, in part, because the received an altogether different report from the victim. (Doc. 6, ¶ 19.)

6. "While it is alleged that plaintiff's speech took place in a public parking lot, it is not alleged that any other people were around. In fact, no other people were around." (Doc. 2, ¶ 21.) These defendants denied this allegation in the form and manner alleged, in part, because the victim was present. (Doc. 6, ¶ 21.)

## II.   ARGUMENT AND CITATION TO AUTHORITY

## A.   STANDARDS OF REVIEW

### 1.   Fed. R. Civ. P. 12(c)

A party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is governed by the Rule 12(b)(6) motion to dismiss standard. Horsley v. Feldt, 304 F.3d 1125, 1131 (11th Cir. 2002). Under this standard, a claim should be dismissed if the facts alleged do not "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). While a court will accept well-pleaded allegations as true, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003). Finally, the Court must construe the pleadings in a light most favorable to the non-moving parties. Jones v. NordicTrack, Inc., 236 F.3d 658, 660 (11th Cir. 2000).

**2.      Preliminary Injunction Standard**

It is well settled that "a preliminary injunction in advance of trial is an extraordinary remedy." <u>Bloedorn v. Grube</u>, 631 F.3d 1218, 1229 (11th Cir. 2011). To prevail, the plaintiff bears the burden of "clearly establishing" the four criteria: (1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. <u>Id.</u> (internal quotations omitted).

As explained below, the Court has ample reason to deny plaintiff's motion.

**B.      Plaintiff's Motion for Preliminary Injunction Fails.**

**1.      Plaintiff Cannot Demonstrate a Substantial Likelihood of Success on the Merits.**

Plaintiff claims the City's ordinance is unconstitutionally vague. "Vagueness arises when a statute is so unclear as to what conduct is applicable that persons 'of common intelligence must necessarily guess at its meaning and differ as to its application.' " <u>Wilson v. State Bar of Ga.</u>, 132 F.3d 1422, 1429 (11th Cir. 1998) (quoting <u>United States v. Gilbert</u>, 130 F.3d 1458, 1462 (11th Cir. 1997)). "The void for vagueness doctrine serves two central purposes: (1) to provide fair notice of prohibitions, so that individuals may steer clear of unlawful conduct; and (2) to prevent arbitrary and discriminatory enforcement of laws." <u>Mason v. Fla. Bar</u>, 208

F.3d 952, 959 (11th Cir. 2000). Thus, "[t]o overcome a vagueness challenge, a statute must give the person of ordinary intelligence a reasonable opportunity to know what is prohibited; and it must provide explicit standards for those who apply them to avoid arbitrary and discriminatory enforcement." Fla. Ass'n of Prof'l Lobbyists, Inc. v. Div. of Legislative Info. Servs. of the Fla. Office of Legislative Servs., 525 F.3d 1073, 1078 (11th Cir. 2008) (per curiam) (internal quotation marks omitted).

### a.    *Fair Notice of Prohibitions*

A facial challenge to an ordinance seeks to invalidate the ordinance itself. Horton v. City of St. Augustine, 272 F.3d 1318, 1329 (11th Cir. 2001). The Eleventh Circuit has recognized "[s]ome disagreement . . . among members of the Supreme Court on exactly how high the threshold for facial invalidation should be set." Fla. League of Pro. Lobbyists, Inc. v. Meggs, 87 F.3d 457, 459 (11th Cir. 1996). Though this disagreement persists, the U.S. Supreme Court "agree[s] that a facial challenge must fail where the statute has a 'plainly legitimate sweep.' " Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 449 (2008) (citations omitted).

"Facial challenges are disfavored" for at least three reasons. Id. at 450. First, facial challenges "often rest on speculation" and therefore "raise the risk of premature interpretation of statutes on the basis of factually barebones records." Id.

(internal quotation marks omitted). Second, facial constitutional challenges "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." Id. (internal quotation marks omitted). Third, "facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." Id. at 451.

City of Woodbury Disorderly Conduct Ordinance, § 16-67, states as follows:

> It shall be unlawful for any person in the city to engage in any violent, tumultuous, obstreperous or similar disorderly conduct tending to infringe on the peace and repose of the citizens of the city. Fighting between two or more persons in which physical contact is made, except that which occurs at boxing exhibitions duly authorized by the city, shall be deemed to be disorderly conduct within the meaning of this section.

Sec. 16-67. Plaintiff contends that the City's disorderly conduct ordinance criminalizes "tumultuous" and "obstreperous speech" without a requirement that the speech also constitute fighting words, which criminalizes exciting, confused, or rude language citing Gooding v. Wilson, 405 U.S. 518, 525 (1972). (Complaint, ¶ 24). Specifically, plaintiff claims the U.S. Supreme Court declared a "virtually identical" statute to be unconstitutional in Gooding. (Doc. 15-1, pp. 2, 6.)

Plaintiff's argument that the instant ordinance is "virtually identical" to the statute struck down in Gooding is patently disingenuous. In Gooding, the Supreme Court struck down a law that expressly regulated speech. The statute at issue in Gooding, former O.C.G.A. § 26-6303 (1933), was entitled "Using abusive or obscene language," and provided that "Any person who shall, without provocation, use to or of another, and in his presence, ***opprobrious words or abusive language***, tending to cause a breach of the peace . . . shall be guilty of a misdemeanor." Id. at 519 (emphasis added); O.C.G.A. § 26-6303 (1933). In contrast, and as shown above, the City's ordinance makes it a crime "for any person in the city to engage in any violent, tumultuous, obstreperous or similar ***disorderly conduct*** tending to infringe on the peace and repose of the citizens of the city." Woodbury Code of Ordinances § 16-67 (emphasis added). Thus, plaintiff's representation to this Court that the two statutes are "virtually identical" is baffling. By any objective reading, they are not. The older Georgia statute criminalizes "language," whereas the City's ordinance criminalizes "conduct."

The speech/conduct distinction is the touchstone of First Amendment jurisprudence. "While drawing the line between speech and conduct can be difficult, [the Supreme] Court's precedents have long drawn it, . . . and the line is ''long familiar to the bar.'" Nat'l Inst. of Fam. & Life Advocs. v. Becerra, 138 S. Ct. 2361, 2373 (2018). Plaintiff's motion for injunctive relief and partial judgment

on the pleadings is based entirely on his false comparison of the City's ordinance criminalizing *conduct* with an unconstitutional statute criminalizing *language*—with absolutely no acknowledgement of the longstanding speech/conduct distinction. This alone should tell the Court everything it needs to deny plaintiff's meritless motion.

Applying the proper standard, the language in the City ordinance provides fair notice of the prohibited conduct because its terms provide fair notice to residents not to engage in "violent" and "tumultuous" conduct. Indeed, the Georgia Supreme Court has previously held that such terms would put a person of common intelligence on notice of what of what conduct would be prohibited. See Freeman v. State, 302 Ga. 181, 183, 805 S.E.2d 845, 848 (2017) ("A person of common intelligence can ascertain from the word "tumultuous" that he or she may be found guilty of disorderly conduct under OCGA § 16–11–39 (a) (1) when that person acts in a disorderly, turbulent, or uproarious manner toward another person, which places the other person in reasonable fear for his or her safety."). Thus, the ordinance is not vague because the conduct prohibited is clear.

### b.   *Arbitrary and Discriminatory Enforcement*

Legislation may be unconstitutionally vague on its face if "it encourages arbitrary enforcement by failing to describe with sufficient particularity what a suspect must do in order to satisfy the statute." Georgia Outdoor Network, Inc. v.

Marion Cnty., 652 F. Supp. 2d 1355, 1366–67 (M.D. Ga. 2009) (quoting Kolender v. Lawson, 461 U.S. 352, 361 (1983)). The Supreme Court recognized "the requirement that a legislature establish minimal guidelines to govern law enforcement" is the most important aspect of the vagueness doctrine." Kolender, 461 U.S. 352.

As discussed above, the ordinance reasonably defines the prohibited behavior restrictions. Even if "similar disorderly conduct tending to infringe on the peace and repose of the citizens of the city" could arguably be considered broad and give law enforcement the discretion to determine what infringes on the peace and repose of the citizens of the city, that is not enough to invalidate the ordinance. See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. at 489, 503 (1982) (finding that even though an ordinance gave police officers considerable discretion "to give meaning to the ordinance and to enforce it fairly," the speculative danger of arbitrary enforcement was not sufficient to render the ordinance facially void for vagueness)).

Thus, the City ordinance has a plainly legitimate sweep, and it does not pose a danger of arbitrary and discriminatory enforcement because it clearly defines the behavior that would constitute disorderly conduct.

### 2.      Irreparable Injury Will Not Result From Denial of a Preliminary Injunction.

The purpose of a preliminary injunction is to "position the parties as best we can until a trial on the merits may be held." <u>Bloedorn v. Grube</u>, 631 F.3d 1218, 1229 (11th Cir. 2011). "The irreparable injury sufficient to satisfy the burden "must be neither remote nor speculative, ***but actual and imminent***." <u>In re Georgia Senate Bill 202</u>, 622 F. Supp. 3d 1312, 1339 (N.D. Ga. 2022) (citing <u>Siegel v. LePore</u>, 234 F.3d 1163, 1176 (11th Cir. 2000)) (emphasis added). Here, as set forth above, the ordinance at issue criminalizes conduct, not speech. Therefore, plaintiff has not suffered a loss of First Amendment freedom, which is required to show irreparable injury. <u>See</u> <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976) (finding "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Therefore, plaintiff has not satisfied the irreparable harm factor of the preliminary injunction test.

### 3.      Granting the Preliminary Injunction will not Serve the Public Interest.

"Under the third and fourth factors of the preliminary injunction test, a court must weigh (i) whether the City's interest in maintaining its disorderly conduct ordinance outweighs the threat of injury to plaintiff and (ii) whether an injunction would be adverse to the public's interests, which merge with those of the state." <u>In re Georgia Senate Bill 202</u>, 622 F. Supp. 3d 1312. Here, the ordinance in question

is not facially unconstitutional and does not regulate plaintiff's speech. Likewise, the ordinance does not prevent plaintiff from pointing out racist behavior or complaining that his water service was turned off despite the fact he did not pay his bill. Therefore, plaintiff fails to satisfy the third or fourth prongs of the preliminary injunction test.

## C.   Plaintiff's <u>Monell</u> Claim Against the City Fails.

Plaintiff's <u>Monell</u> claim against the City is premature because the ordinance at issue is constitutional. To establish municipal liability under § 1983, a plaintiff must show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989). As shown above, the City's ordinance does not offend the Constitution. Further, even if there was some question about the constitutionality of the City's ordinance at this stage, judgment on the pleadings with respect to the <u>Monell</u> claim would be premature as there has been no discovery on the relevant facts of the case—i.e., plaintiff's actual conduct or how that conduct was reported to Corporal McDaniel.

As shown above, the City has denied most of the operative, necessary facts to establish plaintiff's claim on Count I. By virtue of these denials, issues of fact have been raised in the pleadings that preclude judgment on the pleadings at this stage. <u>Jones v. NordicTrack, Inc.</u>, 236 F.3d 658, 660 (11th Cir. 2000).

Furthermore, the Court must construe the alleged facts and the City's denials in a light most favorable to the non-moving parties. Id.

Because the defendants have denied the operative facts in plaintiff's complaint that might state a claim for Free Speech violations (Count One), the Court should deny plaintiff's motion for judgment on the pleadings for the Monell claim and allow the parties to further develop the necessary factual record to reach a determination on this claim.

## D.   Corporal McDaniel is Entitled to Qualified Immunity.

Just as a preliminary injunction and judgment on the pleadings with respect to the City's ordinance are premature at this stage, so is plaintiff's motion for judgment on the pleadings as to Corporal McDaniel. Given the denials in the answer and lack of any factual development whatsoever, it cannot be shown at this early stage that Corporal McDaniel violated plaintiff's constitutional rights—much less his *clearly established* constitutional rights—such that he is not entitled to the defense of qualified immunity at this stage.

The sole basis for plaintiff's motion for judgment on the pleadings with respect to Corporal McDaniel is plaintiff's suggestion that he simply must have known that the City's ordinance was unconstitutional based on the Supreme Court's holding in Gooding v. Wilson, even though a Court has never declared this

particular ordinance to be unconstitutional. There are several problems with this theory.

First, as shown above, the statute at issue in <u>Gooding</u> is not, as plaintiff insists, "functionally identical" to the City's ordinance here, because the City's ordinance concerns only conduct, whereas the statute at issue in <u>Gooding</u> concerned language. For the same reasons the decision in <u>Gooding</u> does not warrant a preliminary injunction on the enforcement of the ordinance at issue here, it also would not put a reasonable officer on notice that there was any issue or problem with respect to City's ordinance.

Second, even if another court *had* previously declared the City's ordinance (or one that is *actually* identical to it) to be unconstitutional, that would not end the analysis with respect to Corporal McDaniel. The elements for a § 1983 claim for malicious prosecution include: (1) the elements of the common law tort of malicious prosecution and (2) a violation of the Fourth Amendment right to be free from unreasonable searches and seizures. <u>Grider v. City of Auburn</u>, 618 F.3d 1240, 1256 (11th Cir. 2010). The common law elements of malicious prosecution are: (1) criminal prosecution initiated by the defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff's favor; and (4) caused damages to the plaintiff. <u>Wood v. Kessler</u>, 323 F.3d 872, 882 (11th Cir. 2003).

"[T]he existence of probable cause defeats a § 1983 malicious prosecution claim." <u>Grider</u>, 618 F.3d at 1256. Probable cause exists where an arrest is objectively reasonable under the circumstances. <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1195 (11th Cir. 2002). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing or is about to commit an offense." <u>Wood</u>, 323 F.3d at 882. The standard does not require the same type of specific evidence of each element of offense as would be needed to support a conviction. <u>Holmes v. Kucynda</u>, 321 F.3d 1069, 1079 (11th Cir. 2003).

However, even where actual probable cause is lacking, officers will be entitled to the defense of qualified immunity on a malicious prosecution claim if there was *arguable* probable cause for the arrest. "[Q]ualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights which a reasonable person would have known." <u>McCullough v. Antolini</u>, 559 F.3d 1201, 1205 (11th Cir. 2009). "The purpose of qualified immunity is to allow officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." <u>Poulakis v. Rogers</u>, 341 F. App'x 523, 525 (11th Cir. 2009) (citing <u>Anderson v. Creighton</u>, 483 U.S. 635, 638-39 (1987)). Qualified

immunity protects from suit "all but the plainly incompetent or one who is knowingly violating the federal law." Lee, 284 F.3d at 1194.

To overcome qualified immunity, a plaintiff must show: (1) the facts viewed in the light most favorable to her establish a constitutional violation by the officer; and (2) the unlawfulness of the officer's actions was "clearly established" at the time of the incident. Poulakis, 341 F. App'x at 525. Concerning arrests, a constitutional violation depends on whether *actual* probable existed for the arrest, but whether a constitutional right was "clearly established" depends on whether there was *arguable* probable cause for the arrest. See Case v. Eslinger, 555 F.3d 1317, 1326-27 (11th Cir. 2009).

*Actual* probable cause exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing or is about to commit an offense." Wood, 323 F.3d at 882. *Arguable* probable cause exists where an officer reasonably but mistakenly believes probable cause existed in light of the information the officer possessed. Id. Importantly, arguable probable cause does not require proof of every element of a crime. Grider, 618 F.3d at 1257.

Plaintiff appears to assume there was no actual or  no arguable probable cause for his arrest here because the ordinance for which plaintiff was arrested is

superficially similar to the statute the Supreme Court had declared unconstitutional in <u>Gooding</u>. However, the standard for arguable probable cause is not "has a statute been declared unconstitutional"—and indeed, plaintiff points to no rule establishing that prosecution of a judicially barred criminal statute bars qualified immunity *per se*. Rather, the standard for arguable probable cause is "whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." <u>Wood</u>, 323 F.3d at 878.

The question, then, does not turn on whether the City's ordinance or a similar statute had been declared unconstitutional *before* plaintiff was prosecuted— rather, the dispositive question, after further factual development in discovery, will be whether a *reasonable officer would have known* the statute was unconstitutional. And here, a reasonable officer would not have made the inferential leap that plaintiff makes here: that a Supreme Court decision that a statute regulating *language* is unconstitutional would encompass a functionally distinct city ordinance governing *conduct*. To date, the City's ordinance has not been repealed and it is still "on the books" in Woodbury.

But even if the City's specific ordinance *had* been previously declared unconstitutional, that would not necessarily mean Corporal McDaniel would have acted unreasonably in enforcing it. Not surprisingly, other courts have observed that an officer is not necessarily deprived of qualified immunity where he had

probable cause to arrest based on a statute that had been declared unconstitutional but nevertheless remained "on the books." In <u>Amore v. Novarro</u>, 624 F.3d 522 (2d Cir. 2010), an officer arrested the plaintiff under a statute that had been declared unconstitutional *eighteen years* earlier. <u>Id.</u> at 525-26. Even so, it remained "on the books," unrepealed by the state legislature and appearing in published versions of the New York Penal Law, Westlaw, and Lexis sites without notation that the statute was unconstitutional. <u>Id.</u> at 533. Even though the law had been unconstitutional for nearly two decades, the court in <u>Amore</u> held the arresting officer was nevertheless entitled to qualified immunity: "In determining whether an officer is entitled to qualified immunity, the question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." <u>Id.</u> at 533-34. The court found no prior case law suggesting "that if a statute has been held unconstitutional, adherence to it by a law enforcement official is, *ipso facto*, unreasonable for qualified immunity purposes irrespective of the circumstances. We do not think that to be the law." <u>Id.</u> at 534.

<u>Amore</u>, then, stands for the proposition that officers can act reasonably by enforcing an unconstitutional statute that remains "on the books." How much more reasonable, then, did Corporal McDaniel act here by enforcing an ordinance that *had not* been declared unconstitutional?

18

In short, the Supreme Court's decision in <u>Gooding</u> cannot, in any way, be the sole determinative factor on plaintiff's unlawful seizure claim against Corporal McDaniel. That claim can only be resolved based on the "facts and circumstances within [Corporal McDaniel's] knowledge, of which he [] has reasonably trustworthy information" from a source such as a reporting victim. <u>See</u> <u>Wood</u>, 323 F.3d at 882. At this stage, the operative "facts and circumstances" as alleged by plaintiff have been denied. Construing those denials with plaintiff's allegations in defendant's favor, it is simply premature to reach a conclusion as to Corporal McDaniel's liability or qualified immunity defense here. That determination can only come with further factual development through discovery. Accordingly, the Court should deny plaintiff's motion for judgment on the pleadings as to Corporal McDaniel.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, defendants respectfully request that the Court deny plaintiff's motion for preliminary injunction and for partial motion for judgment on the pleadings.

Respectfully submitted this 22nd day of December, 2023.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Wesley C. Jackson*
Sun S. Choy
Georgia Bar No. 025148

19

schoy@fmglaw.com
Wes Jackson
Georgia Bar No. 336891
wjackson@fmglaw.com
Marisa M. Beller
Georgia Bar No. 845893
Marisa.Beller@fmglaw.com

*Attorneys for Defendant Robert McDaniel and City of Woodbury*

100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (Telephone)
(770) 937-9960 (Facsimile)

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing has been prepared with Times New Roman, 14-point font, in compliance with L.R. 5.1(b).

/s/ Wesley C. Jackson
Wes Jackson
Georgia Bar No. 336891
wjackson@fmglaw.com

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway
 Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (Telephone)
(770) 937-9960 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing

***DEFENDANTS CITY OF WOODBURY AND CORPORAL MCDANIEL'S***

***RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR***

***INJUNCTIVE RELIEF AND PARTIAL MOTION FOR JUDGMENT ON THE***

***PLEADINGS*** to the Clerk of Court using the CM/ECF system which will

automatically send electronic mail notification of such filing to counsel of record

who are CM/ECF participants. Counsel of record are:

Zack Greenamyre
MITCHELL SHAPIRO GREENMAMYRE & FUNT, LLP
3490 Piedmont Road, Suite 650
Atlanta, GA 30305
sam@mitchellshapiro.com
zack@mitchellshapiro.com

*Counsel for plaintiff*

Phillip E. Friduss
Hall Booth Smith, P.C.
191 Peachtree Street, NE
Suite 2900
Atlanta, Georgia 30303
pfriduss@hallboothsmith.com
mezejiofo@hallboothsmith.com

*Counsel for defendant Matthews*

This 22nd day of December, 2023.

/s/ Wesley C. Jackson
Wes Jackson

22

Georgia Bar No. 336891
wjackson@fmglaw.com

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway
 Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (Telephone)
(770) 937-9960 (Facsimile)