IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

HARRY LEWIS,

     Plaintiff,

v.

CITY OF WOODBURY, ROBERT
MCDANIEL, and DOUG
MATTHEWS,

     Defendants.

CIVIL ACTION FILE

NUMBER 3:23-cv-126-TCB

## O R D E R

This case comes before the Court on the motion [15] of Plaintiff Harry Lewis for a preliminary injunction against enforcement of Defendant City of Woodbury's disorderly conduct ordinance and for partial judgment on the pleadings.

## I.  Background

In July 2021, Lewis was arrested under the City's disorderly conduct ordinance following a conflict with Defendant Doug Matthews.

The City's disorderly conduct ordinance reads, in relevant part, "[i]t shall be unlawful for any person in the city to engage in any violent, tumultuous, obstreperous or similar disorderly conduct[.]" Woodbury, Ga., Code § 16-67.

A little background: Before Lewis's arrest, the City turned off his water service because of an outstanding balance. The City had yet to turn on Lewis's water service a day after paying his bill. Believing that Matthews was responsible for the City's water service, Lewis confronted Matthews, telling him that the City's employees were racist. Matthews then reported Lewis to the police, claiming that Lewis accosted, yelled at, and cursed at him. The police arrested Lewis, but his disorderly conduct charge was dismissed in August.

In June 2023, Lewis filed this suit against the City, Woodbury Police Department Officer Robert McDaniel, and Matthews. He brings three claims: (1) violation of free speech rights under the United States Constitution and the Georgia Constitution, (2) unlawful seizure, and (3) attorneys' fees. Lewis then filed a motion [15] for preliminary and

permanent injunctive relief and for a partial judgment on the

pleadings.[1]

## II.    Legal Standard

A preliminary injunction is "an extraordinary and drastic

remedy," and a movant must satisfy four prerequisites for a court to

grant one. *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*,

320 F.3d 1205, 1210 (11th Cir. 2003) (quoting *McDonald's Corp. v.

Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)). A movant must

establish: (1) a substantial likelihood of success on the merits; (2)

irreparable injury will be suffered unless the injunction issues; (3) the

threatened injury to the movant outweighs whatever damage the

proposed injunction may cause the opposing party; and (4) if issued, the

---

[1] Because the Court will not find the ordinance to be facially unlawful, it will also deny Lewis's motion for judgment on the pleadings. The Court finds that there are several issues of material fact in dispute, such as the circumstances of Lewis's arrest, the constitutionality of the ordinance, and the immunity from liability of Defendants. Accordingly, judgment as a matter of law is inappropriate. *See Christopher v. Florida*, 449 F.3d 1360, 1364 (11th Cir. 2006) ("[I]f there is substantial conflict in the evidence, such that 'reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, the motion must be denied.'") (quoting *Walker v. NationsBank of Fla. N.A.,* 53 F.3d 1548, 1555 (11th Cir. 1995)).

injunction would not be adverse to the public interest. *Id.* (citations omitted). Of these four factors, the likelihood of success on the merits is the most important. *See Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002).

## III.  Discussion

Lewis contends that he is likely to succeed on the merits because the City's ordinance is facially unconstitutional. He argues that the ordinance violates the First Amendment by incriminating protected speech. Specifically, he contends that the words "tumultuous," "obstreperous," and "other disorderly conduct" make the ordinance vague and overbroad, implicating protected expressive conduct.

Lewis's arguments are not likely to succeed on the merits because, as shown below, the City's disorderly conduct ordinance likely survives constitutional muster.[2]

---

[2] Because Lewis fails to establish the most important factor for a preliminary injunction, likelihood of success on the merits, the Court need not discuss the remaining factors, as they are not determinative. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (noting that a plaintiff seeking a preliminary injunction "must meet all four prerequisites.").

## A.    Overbreadth

"[W]hen overly broad statutory language seems to sweep protected First Amendment expression directly into the scope of a regulation affecting speech, or indirectly places an undue burden on such protected activity, free expression can be chilled even in the absence of the [ordinance's] specific application to protected speech." *Am. Booksellers v. Webb*, 919 F.2d 1493, 1499 (11th Cir. 1990). This is known as the overbreadth doctrine.

"Overbreadth is 'strong medicine' that courts should employ 'sparingly and only as a last resort.'" *Cheshire Bridge Holdings, LLC v. City of Atlanta*, 15 F.4th 1362, 1370 (11th Cir. 2021) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)). The ordinance's overbreadth must be "real" and "substantial . . . judged in relation to the [ordinance's] plainly legitimate sweep." *Broadrick*, 413 U.S. at 615.

"[T]he mere fact that one can conceive of some impermissible applications of [an ordinance] is not sufficient to render it susceptible to an overbreadth challenge. As a result, succeeding on a claim of substantial overbreadth is 'not easy to do.'" *Cheshire Bridge*, 15 F.4th at 1371 (citation and quotation omitted). "Rarely, if ever, will an

overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

The first step in evaluating an overbreadth challenge "is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 494 (1982).

Lewis argues that the City's ordinance is overbroad because its prohibition of "any violent, tumultuous, obstreperous or similar disorderly conduct tending to infringe on the peace and repose of the citizens of the city" implicates constitutionally protected speech and expressive conduct.

### 1.   The First Amendment and Disorderly Conduct Ordinances

The First Amendment, applied to the states and their municipalities through the Fourteenth Amendment, provides, in part, that "Congress shall make no law . . . abridging the freedom of speech[.]" U.S. Const. Amend. I.

The First Amendment's protection, however, "is not absolute[.]" *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571 (1942). There are "limited classes of speech" that the government may regulate. *Id.* at 571–72. Such classes of speech include "fighting words" and "true threats." *Id.* at 572–73; *Virginia v. Black*, 538 U.S. 343, 359 (2003).

A disorderly conduct law regulating speech or conduct may be unconstitutional if the law's language "is so broad or indefinite as to permit the application of the [ordinance] to speech that is protected." *City of Macon v. Smith*, 259 S.E.2d 90, 91 (Ga. 1979).

Alternatively, disorderly conduct laws may be constitutional if the state courts authoritatively construe the law to punish only "fighting words." *Chaplinsky*, 315 U.S. at 573. To survive constitutional muster, a disorderly conduct law "must be carefully drawn or be authoritatively construed to punish only unprotected speech and not be susceptible of application to protected expression." *Gooding v. Wilson*, 405 U.S. 518, 522 (1972).

### 2.   Woodbury's Disorderly Conduct Ordinance

The City's disorderly conduct ordinance incriminates (1) "violent," (2) "tumultuous," (3) "obstreperous," and (4) "similar disorderly"

conduct. Woodbury, Ga., Code § 16-67. Lewis does not dispute that
"violent" conduct is unprotected by the First Amendment.

In support of his argument that the City's ordinance is facially
unconstitutional, Lewis primarily relies on *Gooding*, 405 U.S. at 518,
where the United States Supreme Court struck down Georgia's previous
disorderly conduct statute. That statute read, "[a]ny person who shall,
without provocation, use to or of another, and in his presence . . .
opprobrious words or abusive language, tending to cause a breach of the
peace . . . shall be guilty of a misdemeanor." *Id.* at 519. The Supreme
Court held that the statute was unconstitutionally vague and overbroad
because the Georgia courts had not meaningfully attempted to limit the
definition of "opprobrious" or "abusive" speech to cover only fighting
words. *Id.* at 524.

*Gooding*, however, is distinguishable in two ways. First, the
statute in *Gooding* "punishe[d] only spoken words[,]" while the City's
ordinance punishes only conduct. *Id.* at 520. Second, the City's
ordinance does not use the terms "opprobrious" or "abusive," which the
Supreme Court held were unconstitutionally vague. Instead, the City's
ordinance uses the words "tumultuous" and "obstreperous," which have

been construed or can be commonly understood to cover only "fighting words." Accordingly, Lewis's reliance on *Gooding* as invalidating a "virtually identical" law does not support his argument. [15] at 6. But the Court will still analyze the ordinance's alleged overbreadth based on its own text.

### a.   "Tumultuous"

The Woodbury ordinance criminalizes "any . . . tumultuous . . . conduct tending to infringe on the peace and repose of the citizens of the city."

The ordinance does not punish speech directly, but conduct. This does not automatically save the ordinance, however, because the First Amendment "affords protection to symbolic or expressive conduct as well as to actual speech," *Black*, 538 U.S. at 358. But the fact that the ordinance affects conduct does make a difference because "where conduct and not merely speech is involved . . . the overbreadth of [an ordinance] must not only be real, but substantial as well, judged in relation to the [ordinance's] plainly legitimate sweep." *Broadrick*, 413 U.S. at 615.

"Tumultuous" is not defined in the ordinance. Accordingly, "we look to the plain and ordinary meaning of the [ordinance's] language as it was understood at the time the law was enacted." *United States v. Chinchilla*, 987 F.3d 1303, 1308 (11th Cir. 2021).

In 1980, when the City's ordinance was enacted, "tumultuous" meant "marked by violent or overwhelming turbulence or upheaval." WEBSTER'S NEW COLLEGIATE DICTIONARY 1249 (1980) (further defining "tumultuous" as "(1) marked by tumult, (2) tending or disposed to cause or incite a tumult."). Tumult was defined as "(1) a disorderly agitation or milling about of a crowd, usually with uproar and confusion of voices. (2) hubbub, din, (3)(a) a violent agitation of mind or feelings, (3)(b) a violent outburst." *Id.*

"Tumultuous" conduct is closely associated with violence, as shown by the number of times violence is mentioned in those dictionary definitions.

And other jurisdictions have interpreted the phrase "tumultuous conduct" to survive constitutional muster because it is linked to physical violence. *See State v. Russell*, 890 A.2d 453, 459 (R.I. 2006) (holding that Rhode Island's disorderly conduct statute, which

10

criminalizes "[e]ngag[ing] in . . . tumultuous behavior," was not

constitutionally overbroad); *State v. Teale*, 390 P.3d 1238, 1244 (Haw.

2017) ("'[T]umultuous behavior' is most appropriately defined as

conduct involving violent agitation or extreme outbursts."); *In re*

*Bushman*, 463 P.2d 727 (Cal. 1970) (holding that a breach-of-the-peace

statute prohibiting "tumultuous . . . conduct" is not unconstitutionally

overbroad), *disapproved of on other grounds by People v. Lent*, 541 P.2d

545 (Cal. 1975); *but see Marks v. City of Anchorage*, 500 P.2d 644, 650

(Alaska 1972) (holding that an Anchorage ordinance prohibiting

"tumultuous behavior" was overbroad in violation of the First

Amendment).

Most significantly, the Georgia Supreme Court has held that

Georgia's disorderly conduct statute, which also criminalizes

"tumultuous" conduct, is not overbroad. *Freeman v. State*, 805 S.E.2d

845, 850 (Ga. 2017). The statute punishes individuals acting "in a

violent or tumultuous manner toward another person whereby such

person is placed in reasonable fear of the safety of such person's life,

limb, or health[.]" O.C.G.A. § 16-11-39(a)(1).

In *Freeman*, the Georgia Supreme Court narrowly construed the statute to "*only* reach[] expressive conduct that amounts to 'fighting words[.]'" *Freeman*, 805 S.E.2d. at 850.[3] The court acknowledged that "there are several tumultuous activities that could be used or interpreted as a form of free expression" but chose to construe the statute to not implicate those activities. *Id.* at 849.

That said, the Georgia Supreme Court has not interpreted the municipal ordinance at issue here. But considering the dictionary definition of tumultuous, other courts' interpretations of "tumultuous conduct" in disorderly conduct statutes, and the Georgia Supreme Court's consideration of a similar statute, the City's ordinance is likely not constitutionally overbroad. At this stage of the litigation, the Court will find that Lewis has not met his burden of showing that he is substantially likely to succeed on the merits. Nor has Lewis shown that

---

[3] The state-wide statute upheld in *Freeman* assumes the constitutionality of local disorderly conduct laws by recognizing the power of municipalities to enact such laws. *See* O.C.G.A 16-11-39(c) ("This Code section shall not be deemed or construed to affect or limit the powers of counties or municipal corporations to adopt ordinances or resolutions prohibiting disorderly conduct within their respective limits.").

the Woodbury ordinance's overbreadth is both real and substantial based on the term "tumultuous."

### b.   "Obstreperous"

The ordinance's inclusion of the word "obstreperous" is also likely not overbroad. While the Georgia Supreme Court has not construed the term directly, "obstreperous" is not "so broad or indefinite as to permit the application of the [ordinance] to speech that is protected." *City of Macon*, 259 S.E.2d at 91. Other courts have also held that "obstreperous" is an appropriate term for criminalizing unprotected conduct.

It is again appropriate to consider the word's definition at the time of enactment. In 1980, "obstreperous" was defined as "marked by unruly or aggressive noisiness: clamorous" and "stubbornly defiant: unruly." WEBSTER'S NEW COLLEGIATE DICTIONARY 786 (1980). Based on this definition, obstreperous is closely linked with aggression and likely constitutes fighting words.

Though the Georgia Supreme Court has not construed this term, other courts have found that laws containing the word "obstreperous" pass constitutional muster.

Virginia courts have held "obstreperous" conduct to be beyond constitutional protection. For example, in *Wright v. Virginia Beach,* No. 1399-16-1, 2017 WL 3254791, at *2 (Va. Ct. App. Aug. 1, 2017), the City of Virginia Beach's disorderly conduct ordinance read, "[i]t shall be unlawful . . . for any person to disturb the peace of others by violent, tumultuous or obstreperous conduct[.]" The plaintiff challenged the ordinance as facially unconstitutional for its use of "obstreperous." *Id.* at *4. The court disagreed, holding that the ordinance's "obstreperous" conduct was not constitutionally protected expressive conduct because the term's plain meaning covered only "conduct which is violent or likely to cause violence[.]" *Id.*

Additionally, the meaning of "obstreperous" can be illustrated by its use in the courtroom. *See, e.g.*, *Weldon v. State*, 543 S.E.2d 56, 58 (Ga. Ct. App. 2000) ("[C]ircumstances may arise which necessitate action by the trial judge to control an obstreperous or disruptive defendant."); Georgia Rule of Professional Conduct 3.5(d) ("A lawyer shall not . . . engage in conduct intended to disrupt a tribunal."). In criminal cases, the defendant's obstreperous conduct can even lead to a finding of summary criminal contempt. *See United States v. Walker*, 679

14

F. Supp. 3d 1328, 1331 (N.D. Fla. June 23, 2023) (holding that the defendant's obstreperous conduct in court constituted contempt warranting exercise of the magistrate judge's summary criminal contempt authority).

In the courtroom context, obstreperous behavior is not protected expressive conduct, indicating that it is likely a form of fighting words that is not protected by the First Amendment.

Finally, a federal district court may conclude that "obstreperous" conduct constitutes fighting words even when the state has not directly construed the term. In *Irizarry v. Denver*, 661 F. Supp. 3d 1073, 1086 (D. Colo. 2023), the plaintiffs were convicted under Denver's disorderly conduct ordinance while protesting police brutality. They brought a claim under 42 U.S.C. § 1983, arguing that their conviction prevented them from exercising their First Amendment rights. The Denver disorderly conduct ordinance read, "[i]t shall be unlawful for any person to disturb . . . the peace . . . by violent, tumultuous, offensive or obstreperous conduct . . . ." *Id.*[4] The district court held that the

---

[4] Lewis also criticizes the City's ordinance for not including language that limits its applicability to certain contexts. He points out that the ordinance applies to the entire public, as evidenced by his being arrested in a parking lot. The Court does not find this argument persuasive. For example, the Denver ordinance at issue

ordinance fit within "the 'fighting words' exception to the right to free speech" and barred the plaintiff's claim. *Id.*

In reaching its conclusion in *Irizarry*, the court relied on a Colorado Supreme Court decision refusing to find the Denver ordinance facially unconstitutional. *See id.*; *Ware v. Denver*, 511 P.2d 475, 475 (Colo. 1973) ("We do not here rule [Denver's disorderly conduct] ordinance itself to be unconstitutional."). Notably, the Colorado Supreme Court did not directly construe "obstreperous" in *Ware*, yet the district court in *Irizarry* still concluded that the ordinance, which incriminates "obstreperous" conduct, punished only "fighting words." *Irizarry*, 661 F. Supp. 3d at 1086 ("The Denver ordinance that plaintiffs were convicted under is the 'fighting words' exception to the right to free speech.").

Here, the City ordinance's inclusion of "obstreperous" likely does not render it unconstitutionally overbroad because "obstreperous" can be understood to cover only fighting words. Lewis lacks a likelihood of

---

in *Irizarry* was also not context-limited, and it survived constitutional challenges in both the Colorado Supreme Court and the Colorado federal district court. Indeed, the plaintiff in *Irizarry* was similarly arrested on a sidewalk.

success on his claim that the City's disorderly conduct ordinance is facially unconstitutional because it uses the term "obstreperous."

### c.    "Similarly Disorderly Conduct"

Finally, the ordinance's use of "similarly disorderly" conduct does not make the ordinance facially unconstitutional. Under the legislative interpretation canon of *ejusdem generis*, "[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 114–15 (2001) (citation omitted); *see also* WILLIAM D. POPKIN, A DICTIONARY OF STATUTORY INTERPRETATION 74 (2007) ("The [*ejusdem generis*] canon asserts that a general phrase at the end of a list is limited to the same type of thing (the generic category) that are found in the specific list.").

Applying this canon, if "violent," "tumultuous," and "obstreperous" all incriminate only unprotected "fighting words," then the general words that follow—"similarly disorderly conduct"—cover only unprotected conduct as well. *See, e.g.*, *Fahey v. Kolcun Tree Care, LLC*, No. 22-14319, 2023 WL 4448012, at *1 (11th Cir. July 11, 2023) (using

17

the *ejusdem generis* canon to hold that a tree services company was not immune from liability under the "any other person" clause of Georgia's Injuries from Equine, Livestock, and Llama Activities Act, which granted civil immunity to "an equine activity sponsor, an equine professional, a livestock activity sponsor, a livestock professional, an owner of a livestock facility, a llama activity sponsor, a llama professional, *or any other person*" for injuries during an equine, livestock, or llama activity (citing O.C.G.A. § 4-12-3(a))).

Therefore, Lewis's argument for "similarly disorderly" conduct is unlikely to succeed because the term used in the City's disorderly conduct ordinance covers only "fighting words," like the other terms in the list.

### B.   Vagueness

Lewis next argues that the City's ordinance is an impermissibly vague breach-of-the-peace law.

"A law that does not reach constitutionally protected conduct and therefore satisfies the overbreadth test may nevertheless be challenged on its face as unduly vague, in violation of due process." *Vill. of Hoffman Ests.*, 455 U.S. at 497. A law is unconstitutionally vague if it

"fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). But so long as a criminal law provides "'an ascertainable standard of guilt' sufficient to enable persons of ordinary intelligence to avoid conduct which the law forbids," then "absolute precision in drafting laws is not demanded." *High Ol' Times, Inc. v. Busbee*, 673 F.2d 1225, 1229 (11th Cir. 1982).

### 1.   Fair Notice

Lewis argues that the City's disorderly conduct ordinance does not provide fair notice of the conduct it punishes because of the phrase "similarly disorderly conduct." He argues that this general term does not give a person of ordinary intelligence sufficient guidance on what behavior is prohibited. The Court disagrees.

The statutory interpretation principle *ejusdem generis* again guides this inquiry. The ordinance lists three types of conduct: "violent," "tumultuous," and "obstreperous," that all make clear the behavior prohibited. Indeed, in his reply brief, Lewis seems to concede that these

terms do not make the ordinance vague.[5] The more general phrase "similarly disorderly conduct" can easily be read to encompass only behavior that is similarly aggressive. Indeed, the use of "similarly" is itself a clarifying term that points back to the more specific terms listed.

All in all, this is a classic *ejusdem generis* example, and the phrase "similarly disorderly conduct" likely does not make the City's ordinance unconstitutionally vague, as a person of ordinary intelligence can understand that the ordinance punishes conduct similar to the more specific terms. *See United States v. Kaluza*, 780 F.3d 647, 663 (5th Cir. 2015) (using *ejusdem generis* to help determine that the general term "every . . . other person employed on any . . . vessel" is limited to those

---

[5] *See* [26] at 10 ("While the Woodbury ordinance prohibits 'tumultuous' conduct, the prohibition on this conduct is not what gives the statute its unconstitutional vagueness. The Woodbury statute is inherently vague because its prohibition of 'violent,' 'tumultuous,' or 'obstreperous' conduct contains the patently unclear addition of 'or similar disorderly conduct.'"). The Georgia Supreme Court has already held that the term "tumultuous" did not make the state disorderly conduct statute unconstitutionally vague. Lewis tries to differentiate this case from *Freeman* by arguing that the *Freeman* statute was qualified by the phrase "reasonable fear of the safety of such person's life, limb, or health." But the court in *Freeman* did not base its holding of the term "tumultuous" on the qualifying phrase, but on the commonly understood meaning of "tumultuous" on its own terms. Accordingly, the City's use of "tumultuous" likely does not make the ordinance unconstitutionally vague. The Court also notes that it does not find the term "obstreperous" to be vague, as a person of ordinary intelligence is able to ascertain what behavior is prohibited based on the language.

involved in the "marine operations, maintenance or navigation of the
vessel" based on the previous three specific job titles mentioned); *United
States v. EME Homer City Generation, L.P.*, 727 F.3d 274, 293 (3d Cir.
2013) (applying *ejusdem generis* to hold that "any other appropriate
relief" is "a residual category of the same type as the preceding items
(namely, kinds of relief).") (citation omitted); *diLeo v. Greenfield*, 541
F.2d 949, 954 (2d Cir. 1976) (utilizing the *ejusdem generis* canon in
holding that the language "other due and sufficient cause" in a statute
was not unconstitutionally vague because a person of ordinary
intelligence could understand its meaning based on the five preceding
grounds for dismissal).

## 2.   Arbitrary and Discriminatory Enforcement

Lewis lastly argues that the City's ordinance fails to prevent
arbitrary and discriminatory enforcement. He argues that breach-of-
the-peace ordinances generally are ambiguous, and this ordinance is
especially vague because the phrase "tends to infringe on the peace and
repose of the citizens of the city" does not give sufficient guidance to law
enforcement.

First, states (and municipalities) are well within their power to

enact breach-of-the-peace ordinances. The Supreme Court has clearly

acknowledged this:

> The offense known as breach of the peace embraces a great
> variety of conduct destroying or menacing public order and
> tranquility. It includes not only violent acts but acts and
> words likely to produce violence in others. No one would
> have the hardihood to suggest that the principle of freedom
> of speech sanctions incitement to riot.

*Cantwell v. Connecticut*, 310 U.S. 296, 308 (1940); *see also Broadrick*,

413 U.S. at 615 (discussing breach-of-the-peace ordinances as examples

of laws that "if too broadly worded, may deter protected speech to some

unknown extent," but still emphasizing that "there comes a point where

that effect . . . cannot . . . justify invalidating a statute on its face and so

prohibiting a [s]tate from enforcing the statute against conduct that is

admittedly within its power to proscribe.").[6]

Lewis's reference to *Cox v. Louisiana*, 379 U.S. 536 (1965),

and *Coates v. City of Cincinnati*, 402 U.S. 611 (1971), involving

---

[6] Lewis argues in passing that the City's ordinance also "violates Due Process
for an additional reason because citizens have a 'liberty' to engage in defiant,
confused, and loud conduct for innocent purposes." [26] at 10. But the City's
ordinance does not criminalize "defiant, confused, and loud conduct for innocent
purposes"; rather, it criminalizes fighting words and violence, which the
government has the authority to regulate under its police power.

examples of similar breach-of-the-peace statutes that were held unconstitutionally vague, misses the mark, as both cases are distinguishable.

First, in *Cox*, while the Supreme Court did hold the Louisiana breach-of-the-peace statute to be facially unconstitutional, the Court relied on the fact that the Louisiana courts defined breach of the peace as tending to "to agitate, to arouse from a state of repose, to molest, to interrupt, to hinder, to disquiet." 379 U.S. at 551 (citation omitted). The Court held that such language would allow "conviction for innocent speech." *Id.* at 552.

This broad construction of breaching the peace starkly differs from Georgia's construction of breaching the peace as inciting immediate violence. *City of Macon* 259 S.E.2d at 92 ("We interpret the conduct . . . as tending to incite an immediate breach of the peace; i.e., as tending to incite an immediate fight."). *Cox* is thus inapt.[7]

---

[7] It is also worth noting that in a later case, the Supreme Court emphasized that in *Cox* "the Court also noted that the statute[] would be facially unconstitutional for overbreadth. In *Cox*, the Court termed this discussion an 'additional reason' for its reversal. [This] 'additional' holding[] was] unnecessary to the disposition[] of the case[], so much so that only one Member of this Court relied on Cox's 'additional' holding in *Brown v. Louisiana*, 383 U.S. 131, 86 S. Ct. 719, 15

*Coates* is similarly distinguishable. The ordinance at issue there prohibited "conduct annoying to persons passing by." *Coates* 402 U.S. at 612. The Supreme Court held that this use of "annoy" was overbroad and vague. But the Woodbury ordinance does not use "annoy." Rather, it uses more forceful terms like "violent," "tumultuous," and "obstreperous." The laws are quite different, and thus the outcomes of the cases will be different.

Finally, the ordinance at issue likely is not vague, as the Georgia Supreme Court has interpreted a similar ordinance and found it to pass constitutional muster. In *City of Macon*, 259 S.E.2d at 90, the Georgia Supreme Court upheld the City of Macon's disorderly conduct ordinance as facially constitutional.[8] Macon's disorderly conduct ordinance read: "It shall be unlawful for any person to act in a violent, turbulent, boisterous, indecent or disorderly manner or to use profane, vulgar, or obscene language in the city, *tending to disturb good order, peace,* and dignity in said city." (emphasis added). The court held that the

---

L.Ed.2d 637 (1966), which involved convictions under the very same breach-of-the-peace statute." *Broadrick*, 413 U.S. at 614, n.13.

[8] The court did hold that the statute was unconstitutional as applied to the facts of that case.

ordinance's use of "tending to disturb good order, peace" sufficiently modified the ordinance's other language so as it to limit its reach to only unprotected fighting words that tended to incite violence. The ordinance was therefore not facially unconstitutional. Notably, the court equated "disturbing the peace" language with inciting a fight. *Id.* at 92 ("[B]reach of the peace; i. e., as tending to incite an immediate fight.")

The phrase at issue—"tends to infringe on the peace and repose of the citizens of the city"—is quite similar to the language at issue in *Smith*. Indeed, the only real difference between the two ordinances is the inclusion of "repose" in the ordinance here.

But this difference is slight. "Repose" in 1980 meant "peace, tranquility." WEBSTER'S NEW COLLEGIATE DICTIONARY 974 (1980) (further defining "repose" as "(a) a place of rest; . . . (c) a harmony in the arrangement of parts and colors that is restful to the eye.") "Repose" is synonymous with peace and good order, and it is improbable that this difference in word choice would make the City's ordinance vague.

## IV.  Conclusion

In conclusion, Lewis has failed to carry his burden to show a substantial likelihood of success on the merits of his vagueness

challenge. As detailed above, he has also failed to show a substantial likelihood of success on the merits of his overbreadth challenge. Accordingly, the Court will deny his motion for a preliminary injunction.

It is worth repeating that the standard for granting a preliminary injunction is high: the movant must show a substantial likelihood of success on the merits. This case arguably presents close questions, but they are exactly that—*close*. The drastic remedy of a preliminary injunction cannot be granted for anything less than a substantial likelihood of success on the merits, and Lewis has not shown that. Lewis's motion [15] for a preliminary injunction and for partial judgment on the pleadings is denied.

IT IS SO ORDERED this 21st day of May, 2024.

Timothy C. Batten, Sr.
Chief United States District Judge